UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ERVIN STUBBS,

        Plaintiff,                Case No. 2:24-cv-119

v.                                      Honorable Maarten Vermaat

SARAH SCHROEDER et al.,

        Defendants.
_____/

**OPINION DENYING LEAVE
TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.13.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Plaintiff has filed a motion for leave to proceed *in forma pauperis*. (ECF No. 2.) However, Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).

Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action. Further, Plaintiff has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[2] Accordingly, for the reasons set forth below, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. However, the miscellaneous administrative fee "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See* Op. & J., *Stubbs v. Wilson et al.*, Case No. 2:24-cv-23 (W.D. Mich. Feb. 27, 2024); Op. & J., *Stubbs v. Schroeder et al.*, Case No. 2:24-cv-22 (W.D. Mich. Feb. 23, 2024); Op. & J., *Stubbs v. Schroeder et al.*, Case No. 2:22-cv-206 (W.D. Mich. Mar. 17, 2023). All of Plaintiff's dismissals were entered after enactment of the PLRA on April 26, 1996. In addition, on July 29, 2024, Plaintiff was denied leave to proceed *in forma pauperis* under the three-strike rule and his case was dismissed for failure to pay the filing fee. *See* Op., Ord., & J., *Stubbs v. Boudreau et al.*, Case No. 2:24-cv-120 (W.D. Mich. Jul. 29, 2023.)

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).

> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

5

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013).

A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff is presently incarcerated at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at the Marquette Branch Prison (MBP), where he alleges that Defendants are employed. Plaintiff sues Warden Sarah Schroeder, Deputy Warden Unknown Wealton, Assistant Deputy Warden Michael James, Assistant Deputy Warden Unknown Holt, Psychiatrist Unknown Boudreau, "Psych[s]" Unknown Savage, Unknown Hares, and Amy Robare, Doctor Derek J. Falk, Health Unit Manager Unknown Scott, Registered Nurses Chad Hewitt, Kelly Suvanto, Brenda James, C. Negrinelli, K. Dow, Jessica Wright, and Unknown Parties #1 and #2. (Comp., ECF No. 1, PageID.1-4.)

Plaintiff alleges that on May 14, 2024, Plaintiff sliced his wrists and was taken to the triage center. (*Id.*, PageID.5.) Defendants Falk and Wright bandaged Plaintiff's cuts and placed him on observation on suicide watch. (*Id.*) Plaintiff states that the cell was in the quarantine portion of the prison and was filthy and smelled of urine and feces. Both the water faucet and water were rusty. (*Id.*) Plaintiff reported the cell conditions to a non-party Corrections Officer who told Plaintiff to "get off Bam-Bam then." (*Id.*) Plaintiff's suicide gown was unclean and so was his first suicide blanket. (*Id.*)

On May 15, 2024, Plaintiff went on a hunger strike. After the first three days, Defendant Schroeder and Defendant Registered Nurses began to visit Plaintiff in his cell. Plaintiff was

6

supposed to be sent to the hospital after seven days, but he was not. (*Id.*) Plaintiff asserts that he went on the hunger strike in an attempt to force Defendants to transfer him to a facility where he could receive proper mental health treatment. (*Id.*, PageID.8.) Plaintiff states that he was not given state or personal property or cleaning supplies for over a week. (*Id.*, PageID.10.)

On May 31, 2024, Plaintiff's blood pressure was 94/60 when checked by Defendant Falk in the morning. On that same day, Plaintiff's blood pressure was 97/70 when checked by Defendant Negrinelli in the afternoon (*Id.*, PageID.5.) Plaintiff asked Defendants Falk and Negrinelli if he was showing signs of severe dehydration and asked why he was not being sent to the hospital. (*Id.*) Both Defendants Falk and Negrinelli told Plaintiff that his vital signs were stable. (*Id.*) At this point, Plaintiff had been on a hunger strike for seventeen days with nothing but "Boost"[3] to drink. Plaintiff was supposed to have been sent to the hospital pursuant to MDOC policy and then transferred to a mental health facility where he could receive proper care. (*Id.*)

Plaintiff asserts that the named Defendants had a mandatory duty to get him the proper care and that they chose to let Plaintiff suffer for twenty-seven days on a hunger strike. (*Id.*, PageID.6.) Plaintiff asserts that Defendants' conduct was meant to punish Plaintiff in retaliation for attempting suicide and going on a hunger strike. (*Id.*) Plaintiff also claims that the toilet in his cell did not flush properly and that he was not allowed to shower during the entire duration of his hunger strike. (*Id.*) Plaintiff was finally allowed to shower on June 11, 2024. (*Id.*)

Plaintiff states that on June 8, 2024, he ate because he was denied his Boost drink by Defendant Unknown Party #1. (*Id.*, PageID.7.) On June 9, 2024, Defendants Hewitt and Suvanto told Plaintiff that if he ate two trays, he would be given Boost drinks at 6:00 p.m. and 10:00 p.m.

---

[3] Boost is a name-brand nutritional drink containing protein, vitamins, and minerals. *See* https://www.boost.com/boost-nutritional-drinks-faqs (last visited Aug. 7, 2024).

However, Plaintiff was denied those drinks. (*Id.*) Plaintiff states that he was improperly given Milk of Magnesia, which "made all of the dried up feces try to come all out at the same movement." (*Id.*) Plaintiff claims that this caused pain and bleeding. Plaintiff asserts that both Defendants Savanto and Hewitt were aware that this would happen and told Plaintiff it was because he had been such a "pain in their asses." (*Id.*) Plaintiff claims that as of June 25, 2024, he was still suffering from pain in his lower abdomen and back, as well as bleeding from his rectum. (*Id.*) Plaintiff also states that as of June 26, 2024, he had not been given state-issued shoes and only had shower shoes. (*Id.*, PageID.10.)

Plaintiff's allegations do not demonstrate that Plaintiff was in imminent danger of serious physical injury at the time he filed his complaint. "[P]hysical injury is 'serious' for purposes of § 1915(g) if it has potentially dangerous consequences such as death or severe bodily harm. Minor harms or fleeting discomfort don't count." *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019). Plaintiff alleges that he is currently experiencing pain in his lower abdomen and back and bleeding from his rectum. However, Plaintiff does not allege that these symptoms are of the type and severity that could be said to be "serious" within the meaning of § 1915(g), leading to possible death or severe bodily harm.

Moreover, Plaintiff specifically acknowledges that his vital signs were monitored during his hunger strike and that he received continued nutrition during his hunger strike in the form of "Boost" drinks. Plaintiff has since resumed eating. In reaching this conclusion, the Court does not discount the pain that Plaintiff alleges he experiences. Plaintiff's conditions, however, are "described with insufficient facts and detail to establish that he is in danger of imminent physical injury" from Defendants. *See Rittner*, 290 F. App'x at 798 (footnote omitted). That is not to say

that Plaintiff's allegations are "ridiculous . . . baseless . . . fantastic—or delusional . . . irrational or wholly incredible." *Vandiver*, 727 F.3d at 585. They are simply insufficient.

Accordingly, Plaintiff is barred from proceeding *in forma pauperis* under § 1915(g). Plaintiff also has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*. The Court will therefore dismiss this action without prejudice. *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g)."). Plaintiff is free to refile his complaint as a new action in this Court if he submits the filing fees at the time that he initiates the new action.

## Conclusion

For the foregoing reasons, the Court will deny Plaintiff leave to proceed *in forma* pauperis. The Court will dismiss this action without prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees.[4]

For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Further, should Plaintiff appeal this decision, he must pay the $605.00 appellate filing fee in a lump sum, because he is prohibited from proceeding *in forma pauperis* on appeal by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

---

[4] Because Plaintiff has the opportunity to refile his complaint as a new action in this Court by paying the full civil action filing fees at the time of filing the new action, the Court will not assess the district court filing fees in the present action.

9

Dated: August 15, 2024 /s/ *Maarten Vermaat*

                                                              Maarten Vermaat
                                                              United States Magistrate Judge